COURT OF APPEALS
DECISION
DATED AND FILED

July 2, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1923-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF2566

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

TERRANCE GRISSOM,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Dane County: JOHN D. HYLAND, Judge. *Affirmed*.

Before Blanchard, Kloppenburg, and Taylor, JJ

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Terrance Grissom appeals a judgment of conviction for the offense of causing a bomb scare and a circuit court order

denying his postconviction motion to withdraw his plea of guilty to that charge. Grissom argues that he should be allowed to withdraw his plea because the court violated his right to due process by rejecting an argument by Grissom's defense attorney that the court appoint a guardian ad litem to potentially present evidence and argue that Grissom was not competent to proceed in the case, even though the State, Grissom's defense attorney, and Grissom all told the court that an evidentiary hearing was not needed. *See* WIS. STAT. § 971.14(4)(b) (2023-24) ("[i]f the district attorney, the defendant, and defense counsel waive their respective opportunities to present" evidence beyond the court's observations of the defendant and the evidence already in the record, including the report of at least one expert examiner, the circuit court "promptly" determines the defendant's competency, without holding an evidentiary hearing).[1] Grissom also argues that it was error for the court not to rule that § 971.14(4)(b) is unconstitutional as applied to him. Separately, he argues that the court improperly determined that Grissom entered his plea knowingly, voluntarily, and intelligently. Based on these same arguments, Grissom further contends that this court should exercise its discretionary authority to vacate his plea in the interest of justice. We reject each of these arguments and accordingly affirm.

## BACKGROUND

¶2      The State charged Grissom in December 2018 with causing a bomb scare, contrary to WIS. STAT. § 947.015, and making terroristic threats, contrary to WIS. STAT. § 947.019, as a habitual criminal for each charge. Both charges were

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

based on the contents of a letter that Grissom allegedly wrote in prison and sent to a district attorney's office.

¶3    On May 31, 2019, the Dane County circuit court entered an order, pursuant to WIS. STAT. § 971.14, for an examination of Grissom by mental health professionals engaged by the state department of health services to evaluate whether he was competent to proceed in the criminal case.[2]  Psychiatrist Craig Schoenecker conducted a competency evaluation and opined to the following. Grissom met diagnostic criteria for a schizoaffective disorder and an antisocial personality disorder, with "a significant history of psychiatric symptoms, particularly when noncompliant with antipsychotic medication."  Despite those issues, Dr. Schoenecker opined "to a reasonable degree of medical certainty" that Grissom "presently has substantial capacity to understand court proceedings and to assist in his own defense."  As of the time of the examination, Grissom was compliant with his medication injections.

¶4    On July 18, 2019, the circuit court held a hearing to address Dr. Schoenecker's report, at which Grissom represented himself.  The prosecutor asked the court to accept Dr. Schoenecker's conclusion that Grissom was competent.  Grissom first made critical statements about the report—such as that

---

[2] "No person who lacks substantial mental capacity to understand the proceedings or assist in his or her defense may be tried, convicted or sentenced for the commission of the offense so long as the incapacity endures."  WIS. STAT. § 971.13(1).  WISCONSIN STAT. § 971.14(1r) provides that circuit courts "shall proceed under" the procedures set forth in § 971.14 "whenever there is reason to doubt a defendant's competency to proceed."  If there is reason to doubt competency, the defendant is examined, a written report based on the examination is submitted to the circuit court, and there is an opportunity for an evidentiary hearing in the circuit court. § 971.14(2)-(4).  If the court determines "that the defendant is not competent but is likely to become competent ... if provided with appropriate treatment," then the court "shall suspend the proceedings and commit the defendant to the custody of the [Wisconsin Department of Health Services] for treatment."  § 971.14(5)(a)1.

Dr. Schoenecker was not a "proper evaluator"—but ultimately Grissom told the court, "[w]e can go forward" without holding an evidentiary hearing, because Dr. Schoenecker's competency conclusion was correct. The court made a finding that Grissom was competent, based on the report and also on the court's observations of Grissom and sufficiently coherent pro se court filings by Grissom.

¶5 On March 9, 2021—in the midst of delays in getting the case to trial that were attributable to the COVID-19 pandemic—the circuit court learned that another competency evaluation of Grissom was planned. Specifically, Grissom, now represented by counsel, informed the court that there would be a competency evaluation in connection with a separate, pending criminal case against Grissom in Columbia County. Based on that evaluation, on April 5, Dr. Matthew Seipel concluded that Grissom was incompetent but likely to be restored to competency, and the Columbia County circuit court committed Grissom for competency restoration. On April 28, the circuit court in this case said that it would follow the Columbia County court in determining that Grissom was not competent but that he could be restored to competency, and the court in this case committed him for competency restoration.

¶6 On July 2, 2021, Dr. John Pankiewicz conducted a competency evaluation of Grissom and filed a report with the circuit court in this case. Dr. Pankiewicz opined that Grissom was competent. Dr. Pankiewicz observed that Grissom was "clearly aware of [the] charges, the allegations[,] and general court proceedings." Dr. Pankiewicz further observed that Grissom was "uncooperative" and expressed a "negative view of defense attorneys and very often a negative view of the criminal justice system," but that these expressions were products of Grissom's "personal opinions" and not "of his mental illness."

¶7    At a hearing on July 15, the prosecutor, Grissom's then-counsel, and Grissom all told the circuit court that they agreed that he was competent, and the court made a finding to that effect, without the need to hold an evidentiary hearing.

¶8    Nearly one year later, on June 10, 2022, the circuit court ordered another competency examination. This caused clinical psychologist Christina Engen to evaluate Grissom and produce a report, which was filed with the court on July 14, 2022. Dr. Engen reported that she had briefly attempted to interview Grissom on June 30, but that he "presented as hostile and paranoid" and was "not a productive source of information." Dr. Engen further reported that records reflected that Grissom stopped taking antipsychotic medications in August 2021, and as a result he had "decompensated to the point of requiring transfer [from another prison facility] to the Wisconsin Resource Center for stabilization."[3] In June 2022, Grissom was back to being administered court-ordered medications— while under a chapter 51 commitment and an involuntary medication order—to assist him toward "psychiatric stabilization."[4] Dr. Engen opined that Grissom then lacked competency, but that he was "more likely than not to be restored to competency within the time period allowed by statute."[5]

---

[3] The Wisconsin Resource Center is a facility that provides psychiatric care for some inmates in the Wisconsin Department of Corrections.

[4] Chapter 51 of the Wisconsin Statutes aims "to assure the provision of a full range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism[,] and other drug abuse." WIS. STAT. § 51.001(1). A person may be subject to a chapter 51 involuntary commitment if the person is determined to be mentally ill, a proper subject for treatment, and dangerous to him or herself or to others. *See* WIS. STAT. § 51.20(1)(a)1.-2.

[5] *See* WIS. STAT. § 971.14(5)(a) (providing that if a circuit court "determines that the defendant is not competent but is likely to become competent within the period specified in this
(continued)

¶9      At a hearing on July 28, 2022, the prosecutor took the position that Grissom was not competent, but in contrast Grissom and his then-counsel both told the circuit court that Grissom's position was that he was competent. The State's position not to waive the need for an evidentiary hearing triggered the need to hold one. *See* WIS. STAT. § 971.14(4)(b).[6] Dr. Engen testified, after which the court ruled that the State had proved by clear and convincing evidence that Grissom was not competent, but also that "there are indications that things are moving in [a] positive direction," such that it appeared that his competency could be restored within the 12-month statutory period.

¶10      There were additional competency evaluations on multiple occasions between July 2022 and January 2023, each of which produced a report to the circuit court concluding that Grissom remained incompetent.

¶11      This changed with an April 25, 2023 competency report by Dr. Steven Steinert. Dr. Steinert acknowledged Grissom's "established and well-documented history of severe mental illness characterized by delusional thought content, tangential speech, paranoia, and agitation." But Dr. Steinert stated that, as

paragraph if provided with appropriate treatment, the court shall suspend the proceedings and commit the defendant to the custody of the department for treatment for a period not to exceed 12 months, or the maximum sentence specified for the most serious offense with which the defendant is charged, whichever is less.").

[6] As summarized briefly above, WIS. STAT. § 971.14(4)(b) states in pertinent part:

> (b) If the district attorney, the defendant[,] and defense counsel waive their respective opportunities to present other evidence [than the reports of examiners] on the issue [of the defendant's competence], the court shall promptly determine the defendant's competency and, if at issue, competency to refuse medication or treatment for the defendant's mental condition on the basis of the report filed under sub. (3) or (5). In the absence of these waivers, the court shall hold an evidentiary hearing on the issue.

a "result of [Grissom's] current psychiatric treatment," Grissom had been restored to competency. Dr. Steinert emphasized that it was critical for Grissom to continue to take prescribed medications, because doing so had contributed to his "improved psychiatric stability and related capacity to engage in linear, rational, and cooperative legal discussion."

¶12    At a hearing on May 2, 2023, neither the prosecutor nor Grissom's counsel as of that time (hereafter, "defense counsel") challenged Dr. Steinert's opinion that Grissom had been restored to competency and, without holding an evidentiary hearing, the circuit court ruled that he had been restored to competency.

¶13    But on July 17, 2023, defense counsel notified the circuit court in a letter that counsel had "a good-faith reason based on adequate information to doubt Mr. Grissom's competency to proceed," and counsel requested that the court order an examination pursuant to WIS. STAT. § 971.14(2). In response, the court promptly ordered another competency evaluation.

¶14    As a result, Dr. Steinert evaluated Grissom on August 7, 2023. Based on that evaluation and on Dr. Steinert's review of medical records (including 19 prior reports addressing Grissom's competency between 2005 and 2023), Dr. Steinert opined in an August 18, 2023 report that Grissom was competent. At a hearing on August 22, 2023, the prosecutor and defense counsel both said that they had no evidence to present contrary to Dr. Steinert's conclusion of competency, and Grissom said that he agreed with Dr. Steinert's conclusion. The circuit court ruled that Grissom was competent.

¶15    But just days later, on August 25, 2023, defense counsel moved the circuit court for yet another competency evaluation. This motion was based on

7

that fact that defense counsel had received a report referencing Grissom's mental status by Dr. Steven Benson, a clinical psychologist, which was dated and submitted to the Winnebago County circuit court on August 21, 2023, in connection with Grissom's alleged criminal conduct on April 15, 2023, in Winnebago County. Dr. Benson's report was the product of his assignment to conduct a *criminal responsibility* evaluation of Grissom in the Winnebago County case, not a *competency evaluation*, and in that role Dr. Benson had evaluated Grissom on July 27, 2023.[7] In wrapping up his 15-page criminal responsibility report, Dr. Benson added three paragraphs to offer the opinion that Grissom was not competent and that, due to Grissom's "severe intellectual disability," he was "not conducive to competency remediation."

¶16 In response to defense counsel's motion based on Dr. Benson's report, the prosecution submitted a letter to the circuit court stating that the State had no objection to another competency evaluation. On August 31, 2023, the circuit court ordered another evaluation. But in response to this order, on September 12, 2023, the director of the contract agency that conducts forensic competency evaluations on behalf of the department of health services wrote to the court to express the agency's reluctance to conduct another evaluation so soon

---

[7] The purposes of criminal responsibility evaluations differ from the purposes of competency evaluations. Under WIS. STAT. § 971.15(1), "[a] person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law." A criminal defendant's right to a defense of not guilty by reason of mental disease or defect is "an affirmative defense which the defendant must establish to a reasonable certainty by the greater weight of the credible evidence." § 971.15(3). Regarding his assigned task, Dr. Benson concluded that Grissom's behavior at the time of the conduct charged in Winnebago County "was the direct consequence of schizophrenia and rendered him *unable* to conform his conduct to the requirements of the law at the time of the act charged." (Emphasis in original.)

after Dr. Steinert's evaluation and report of August 18, 2023, without a sufficiently clear explanation of need for an additional evaluation.

¶17    On September 21, 2023, defense counsel wrote to the circuit court, reciting the history on the competency issue in this case up to that point, and moving the court to appoint a guardian ad litem (GAL) to "advocate for Mr. Grissom's best interests in any subsequent competency proceedings."[8] Defense counsel stated that, based on his own observations and Dr. Benson's report, counsel had "a sufficient basis to assert that Mr. Grissom has a diminished capacity and that he is at risk of suffering substantial harm (in the form of legal jeopardy) unless protective action is taken." Only a GAL could properly advocate for Grissom's interests in the competency context, defense counsel contended, because as Grissom's attorney, counsel could not "ethically" identify and then present in court the "independent psychological testing and opinions" needed to demonstrate that Grissom was not competent.

¶18    The State filed an objection to the appointment of a GAL. This objection was based in part on WIS. STAT. § 972.11(1), which states in pertinent part, "No guardian ad litem need be appointed for a defendant in a criminal case." The State also argued that defense counsel's GAL request was based on the false premise that the circuit court's ultimate decision as to whether Grissom was competent should be dictated by Grissom's own opinion about his competency, contrary to law that includes WIS. STAT. § 971.14(4)(b), which contemplates that

---

[8] The letter was inconsistent, in that at one point it requested alternative forms of relief—that the circuit "appoint a guardian ad lit[e]m or take other action to protect Mr. Grissom's interests"—but at another point, it unconditionally requested a GAL appointment.

courts base competency decisions in part on records that include one or more examiners' reports.

¶19 On September 29, 2023, the circuit court in this case requested that the Winnebago County Circuit Court forward a copy of a *competency report* that had just been created for use in the Winnebago County case, and the report was forwarded. This September 28, 2023 competency report was prepared by Dr. Steinert, reflecting his conclusion that Grissom was competent. Dr. Steinert based this conclusion on his prior interactions with Grissom and on a 60-minute evaluation that he conducted of Grissom on September 18, 2023, as well as on Dr. Steinert's review of records that included the 20 prior competency reports. As part of this evaluation, Dr. Steinert also reviewed Dr. Benson's criminal responsibility report dated August 21, 2023. Dr. Steinert's competency report included the following determinations: Grissom "continues to reside within a relative period of psychiatric stability"; Grissom appeared to be "medication-compliant"; and Grissom's statements during the interview "were generally linear, coherent, and devoid of signs of severe psychiatric decompensation." In addition, Dr. Steinert opined that Grissom gave indications of malingering. Those indications were that Grissom's responses to "psychological testing indicates that [he] was knowledgeable regarding the answers to competency-related questions, but [that he] intentionally chose [to give] incorrect alternative responses."

¶20 At a hearing on November 8, 2023, the circuit court denied Grissom's motion to appoint a GAL. The court determined that Grissom's due process right not to face criminal proceedings while incompetent was sufficiently safeguarded by the use of the procedures in WIS. STAT. § 971.14, including through defense counsel's efforts on Grissom's behalf in the competency context.

10

¶21    At the same November 8 hearing, the prosecutor asked the circuit court to make a competency determination based on Dr. Benson's August 21, 2023 report and Dr. Steinert's September 28, 2023 report. Grissom told the court that he believed himself to be competent. Defense counsel said that, given the positions of the State and Grissom to waive an evidentiary hearing, "I don't believe the court is in a position to take any additional evidence" and that "I would have nothing to add." Without holding an evidentiary hearing, the court determined that Grissom was competent based on the court's observations and the record developed to that time. The court said that it would maintain a previously scheduled trial date of December 11, 2023.

¶22    Then, without any pertinent intervening filings or circuit court events regarding competency, on December 7, 2023, a few days before the scheduled trial date, the court held a plea hearing at which Grissom entered a guilty plea to the bomb scare charge, while the charge of making terroristic threats was dismissed but read in for purposes of sentencing. Grissom told the court that he had been taking all of the antipsychotic medications that he was supposed to be taking. Defense counsel told the court that he did not know of any reason that the court should not accept Grissom's plea. After an extensive colloquy (discussed in more detail below), the court said that it was satisfied that Grissom entered the guilty plea "freely, voluntarily[,] and intelligently," based on Grissom's "review with counsel of the plea questionnaire and the jury instruction, his discussion with [the court] through which he demonstrates his understanding of all of the information within that form," and the court's own "observations of him during this hearing and his discussions with me."

11

¶23     One week after the plea hearing, the circuit court sentenced Grissom. At the sentencing hearing, defense counsel told the court that counsel was not aware of any reason why the court should not proceed with sentencing.

¶24     In March 2025, represented by new counsel, Grissom filed a motion for the postconviction relief of allowing him to withdraw his guilty plea, raising the same issues that he now renews on appeal. The circuit court rejected these arguments and denied the postconviction motion without holding an evidentiary hearing.

¶25     Grissom appeals.

## DISCUSSION

¶26     When a defendant moves to withdraw a plea after sentencing, as Grissom did here, the motion will not be granted "'unless the defendant establishes by clear and convincing evidence that failure to withdraw the guilty or no contest plea will result in a manifest injustice.'" *State v. Gomolla*, 2024 WI App 13, ¶13, 411 Wis. 2d 239, 4 N.W.3d 610 (quoted source omitted). "A defendant may demonstrate a manifest injustice by showing that he or she did not knowingly, intelligently, and voluntarily enter his or her plea." *Id.* "A plea that was 'not entered knowingly, voluntarily, and intelligently violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right.'" *Id.* (quoted source omitted).

¶27     Turning to what due process generally requires in the competency context, the defendant must have: (1) "'sufficient present ability to consult' with his or her lawyer 'with a reasonable degree of rational understanding'"; and (2) "'a rational as well as factual understanding of the proceedings.'" *State v. Byrge*,

12

2000 WI 101, ¶27, 237 Wis. 2d 197, 614 N.W.2d 477 (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). "This two-part 'understand-and-assist' test constitutes the core of the competency-to-stand-trial analysis." *Id.*, ¶28.

¶28 Also pertinent here, a circuit court's decision that a criminal defendant's condition satisfies the understand-and-assist test "is functionally a factual finding," and therefore, we review that decision "under a clearly erroneous standard of review that is particularized to competency findings." *State v. Smith*, 2016 WI 23, ¶26, 367 Wis. 2d 483, 878 N.W.2d 135.[9]

¶29 The State argues that Grissom's arguments, apart from his challenge to the plea hearing, are "not cognizable" under the guilty-plea-waiver rule. *See State v. Beyer*, 2021 WI 59, ¶14, 397 Wis. 2d 616, 960 N.W.2d 408 (stating that, as a rule of judicial administration, a plea ordinarily waives all nonjurisdictional defects, including constitutional claims, with "limited exceptions"). Grissom argues that the guilty-plea-waiver rule should not be applied to these arguments, because a defendant cannot waive the issue of the defendant's own competency. *See Pate v. Robinson*, 383 U.S. 375, 377, 384-85 (habeas petitioner "was constitutionally entitled to a hearing on the issue of his competence to stand trial,"

---

[9] Our supreme court in *State v. Smith*, 2016 WI 23, 367 Wis. 2d 483, 878 N.W.2d 135, explained that the clearly erroneous standard used to review the ultimate decision by a circuit court regarding a defendant's competency should not be confused with the separate standard of review for the earlier-in-time circuit court decision as to whether there is a "reason to doubt" a defendant's competency sufficient to trigger application of the procedures in WIS. STAT. § 971.14, which is a decision that is reviewed under the erroneous exercise of discretion standard. *Smith*, 367 Wis. 2d 483, ¶24 & n.10; *see* § 971.14(1r)(a) ("The court shall proceed under this section whenever there is reason to doubt a defendant's competency to proceed."). Here, there was no dispute that at all relevant times there was sufficient reason to doubt Grissom's competency, triggering the provisions in § 971.14. The underlying and disputed issue that Grissom contends requires plea withdrawal involves the court's ultimate determination in advance of the plea hearing that he was competent to proceed in this criminal case.

because criminal defendants cannot waive competency in light of the fact that waivers of rights must be knowing and intelligent). The parties' dispute over the guilty-plea-waiver rule may present substantial questions. But we need not resolve the dispute. Instead, we affirm on these issues for reasons we now explain.

### I. Alleged Due Process Violation for Not Appointing a GAL and Holding an Evidentiary Hearing

¶30 As the first issue that Grissom identifies on appeal, he asserts that the circuit court violated his right to due process, and as a result created a manifest injustice at the plea hearing, in the following way: the court did not hold an evidentiary hearing at which Grissom's competency could be tested through opposing evidence and arguments before the court determined, in advance of the plea hearing, that he was competent to proceed in the case. But, as best we can discern, an unstated but necessary element of Grissom's position on this first issue is that the court erred in not appointing a GAL, who Grissom implicitly posits necessarily would have taken the position that an evidentiary hearing was called for, at which the court could have been convinced to find Grissom incompetent, preventing the plea hearing from occurring. Put differently, as far as we can tell, Grissom's argument on the first issue fails if the court was not obligated as a matter of constitutional law to appoint a GAL, as a necessary first step in a chain of hypothetical events that might have produced a different competency ruling and prevented the plea hearing.

¶31 For example, Grissom does not argue that the circuit court misapplied the terms of WIS. STAT. § 971.14(4)(b). To recap, on the facts here, that provision directed the court, at the time of the November 8, 2023 hearing, not to order an evidentiary hearing in light of the fact that the prosecutor, Grissom,

and defense counsel all told the court that such a hearing was not necessary. Instead, § 974.14(4)(b) directed the court to proceed to a competency determination based on the record, including the expert reports before the court. Grissom's argument is that, because the record contained Dr. Benson's closing comments in his criminal responsibility report that Grissom was not competent, the circuit court was obligated to appoint a GAL. This is because, Grissom argues, only a GAL could have advocated for a hearing at which Drs. Steinert and Benson could give testimony to resolve any points of disagreement; only a GAL could have advocated for the position that Grissom was not competent; and this could have led to a different ruling regarding Grissom's competency. At bottom, Grissom asks us to rule that, despite the fact that the prosecutor, Grissom, and defense counsel all waived the opportunity for an evidentiary hearing, the circuit court was required to appoint a GAL to satisfy Grissom's due process rights because the record contained conflicting expert opinion about his competency.

¶32 Even after we have attempted to clarify this first argument, it is not well developed in any respect, and we could reject it for that reason alone. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (this court may decline to address arguments that are undeveloped). But, in any case, we now explain why we reject the argument as best we understand it.

¶33 Grissom's argument starts with the following propositions, which are well established by the U.S. Supreme Court in *Pate*: (1) due process requires that a criminal defendant be competent at all material stages of a criminal proceeding; and (2) state courts must use procedures adequate to protect that due process right. *See Pate*, 383 U.S. at 378; *see also id.* at 385-86 (applying these rules to determine that Pate's history of "pronounced irrational behavior" should have triggered the Illinois state courts to invoke that state's statutory procedures

designed to protect his right to a trial at which he was competent). But Grissom fails to support the proposition that the circuit court here erroneously exercised its discretion when it did not appoint a GAL—no matter what we assume in Grissom's favor about what a GAL, if appointed, would have advocated for—in order to adequately protect his right to proceed in the case only when competent.

¶34 One major problem with Grissom's argument is that he does not show that the circuit court failed to exercise, or improperly exercised, its discretion in applying WIS. STAT. § 972.11(1) to the circumstances here. To repeat, § 972.11(1) states, "No guardian ad litem need be appointed for a defendant in a criminal action." Grissom does not dispute that § 972.11(1) appears to give a circuit court discretionary authority to decide whether the appointment of a GAL is appropriate in a particular criminal case. Instead, Grissom argues that the court here failed to demonstrate that it exercised discretion at all in deciding not to appoint a GAL. We disagree, for reasons we now explain.

¶35 After both sides presented extensive written and oral arguments on the issue, the circuit court made the following comments in denying the motion to appoint a GAL. The court characterized defense counsel's argument as "creative," in apparent recognition of the fact that GAL requests are not typically made in criminal cases. The court also agreed with defense counsel that, if a defendant claims to be competent, even when the defense attorney believes or strongly suspects that the defendant is incompetent, this can be "frustrating" for the defense attorney, and the attorney's advocacy options are in some ways limited in that circumstance. But the court praised defense counsel for his willingness to attempt an unusual approach in this case as part of counsel's "zealous advocacy" on Grissom's behalf.

¶36 It is true that the circuit court initially appeared to suggest an interpretation of WIS. STAT. § 972.11(1) under which courts lack the discretion to appoint GALs in criminal cases under any circumstances. For example, the court made an ambiguous statement that § 972.11(1) is "pretty directive in my view," and the court suggested that, at least in the competency context, defense counsel can be expected to provide all of the due process protection to which a defendant is entitled. But the court ultimately clarified its view, saying that § 972.11(1) recognizes that GAL appointments in criminal cases are possible, but that such appointments will be rare compared to appointments in some other case types. The court specifically observed that § 972.11(1) "does not say [that a GAL] shall not be appointed" in a criminal case. Further, the court commented that, in the specific context of proceedings under WIS. STAT. § 971.14, the appointment of a GAL is typically not going to be called for because the legislature, through § 971.14, has created the "structure for [addressing] competence[,] and [put] safeguards and mechanisms in place[,] which safeguard a case [from] going forward improperly, when there's not a legal justification for finding competence when" the issue of competency has been raised.

¶37 Construing all of the circuit court's comments in context, we interpret it to have determined the following. Under WIS. STAT. § 972.11(1), circuit courts can, but will generally not need to, appoint GALs in criminal cases, and the need for GAL appointments will be especially rare in competency proceedings, given the safeguards for defendants provided by WIS. STAT. § 971.14. Further, in ruling that a GAL should not be appointed here, the court emphasized that it considered defense counsel's advocacy to be excellent and easily sufficient to protect Grissom's interests in the competency context.

17

¶38    We understand Grissom to argue that the circuit court's reasoning for not appointing a GAL was legally erroneous because the court failed to appreciate that defense counsel was obligated under proper interpretations of WIS. STAT. § 971.14 and ethical rules governing attorney conduct to adopt his client's position to waive the evidentiary hearing.[10]  We are not persuaded because case law and the applicable statute suggest the opposite.  *See State v. Guck*, 176 Wis. 2d 845, 852-53, 500 N.W.2d 910 (1993) (noting the statutory change in the wake of *State ex rel. Matalik v. Schubert*, 57 Wis. 2d 315, 204 N.W.2d 13 (1973), to require three distinct voices—the prosecutor's, the defendant's, and defense counsel's—and not just the prosecutor's and defense counsel's, in order to waive the hearing); *State v. Daniel*, 2015 WI 44, ¶¶41-44, 362 Wis. 2d 74, 862 N.W.2d 867 (distinguishing between a defense attorney raising the issue of a defendant's possible lack of competency—which the attorney must do—and a defense attorney affirmatively seeking to prove the incompetency of the attorney's client—which would be problematic); *see also* § 971.14(4)(b)("If the district attorney, the defendant and defense counsel waive their respective opportunities to present other evidence on the issue, the court shall promptly determine the defendant's competency.").

¶39    What due process requires in this context, under *Guck*, is that the defendant be afforded "a reasonable opportunity to demonstrate that he [or she] is

---

[10] In what he identifies as the first issue in this appeal, Grissom does not refer to any interpretation of WIS. STAT. § 971.14(4)(b), or interpretation of the rules governing defense counsel's ethical obligations, under which defense counsel was prohibited from providing a personal answer to the question of whether an evidentiary hearing should be held, contrary to Grissom's own answer.  But it strongly appears that Grissom wants us to consider these topics in connection with this first issue.  He includes such arguments in a purported third issue.  In his favor, we now consider those arguments as part of this first issue, despite the confusing nature of the briefing.

not competent to stand trial." *See Guck*, 176 Wis. 2d at 850-51 (citing *Medina v. California*, 505 U.S. 437 (1992)). Grissom fails to show that, in order to satisfy his right to a "reasonable opportunity," an evidentiary hearing was needed at which there was an attorney, acting as his GAL on this issue, who could argue that he was incompetent, contrary to Grissom's personal waiver of the evidentiary hearing.[11]

¶40 While *Daniel* is not directly on point, it adds to *Guck* in casting serious doubt on the proposition that defense counsel here was prohibited from taking a position in favor of an evidentiary hearing even though Grissom took the opposite position. In *Daniel*, the circuit court attempted to resolve a postconviction competency issue, after Daniel told the court he was competent, by assigning to defense counsel the burden of proving that Daniel was incompetent. *Daniel*, 362 Wis. 2d 74, ¶¶10-17. Following that direction by the circuit court, defense counsel presented extensive testimony and reports by mental health professionals and a social worker. *Id.*, ¶17.

¶41 Our supreme court relied on WIS. STAT. § 971.14 as "guidance" in determining who had the burden to prove competence, even though § 971.14 does not apply to proceedings that occur after sentencing. *Daniel*, 362 Wis. 2d 74, ¶33

---

[11] For context, we note that, in a different case involving WIS. STAT. § 974.14, a defendant could claim a violation of the fundamental right not to be confined as part of competency proceedings *while competent*, unlike Grissom, who claims that he was "*potentially incompetent*" at the time of the plea hearing. This is because defendants also have a fundamental right not to be deprived of liberty without due process of law, and a defendant who is adjudicated incompetent may be deprived of liberty under § 971.14(5). *See State v. Wanta*, 224 Wis. 2d 679, 692-93, 592 N.W.2d 645 (Ct. App. 1999) (noting the existence of "competing fundamental rights of a defendant, which are both at risk when a defendant's competency is called into question"). But for ease of discussion, and given Grissom's emphasis on appeal, we generally discuss this issue in terms of Grissom's due process right to face criminal proceedings while competent.

& n.9, ¶¶34-50. In the course of that discussion, the court noted that § 974.14(4)(b) "does not appear to contemplate" a scenario in which the State and the defendant both take the position that the defendant is competent, but "in contrast it is defense counsel who is questioning competency." *Daniel*, 362 Wis. 2d 74, ¶35. But, the court went on to distinguish between defense counsel merely "raising an issue" of competency and defense counsel "having to prove" incompetency. *Id.*, ¶¶41-44. More specifically, the *Daniel* court explained that, under *State v. Meeks*, 2003 WI 104, 263 Wis. 2d 794, 666 N.W.2d 859, and *State v. Johnson*, 133 Wis. 2d 207, 395 N.W.2d 176 (1986), an attorney's obligation to raise the issue of competency, when there are sufficient indications of incompetency, is limited to the context of raising issues and not actually proving the defendant's incompetency. *Daniel*, 362 Wis. 2d 74, ¶44; *see also Meeks*, 263 Wis. 2d 794, ¶¶2, 54, 60 (attorney could not testify about her "opinions, perceptions, and impressions relating to a former client's mental competency" when the client's competency was in issue, as those matters were necessarily encompassed by the attorney-client privilege); *Johnson*, 133 Wis. 2d at 220-22 (placing a duty on defense counsel to raise the issue of defendant's competency whenever there is reason to doubt it). In the course of this discussion in *Daniel*, our supreme court expressed no concerns with the idea of defense counsel taking a position contrary to the defendant on the topic of whether an evidentiary hearing should be held, so long as counsel did not affirmatively seek to prove incompetency and the ultimate burden on the issue of competency remained on the State. *See Daniel*, 362 Wis. 2d 74, ¶¶37, 51, 53.

¶42 Grissom is correct that this aspect of *Daniel* does not directly answer the due process issue he raises. But the defense attorney's conduct in *Daniel*, involving defense counsel's affirmative presentation of evidence that could

undermine the defendant's position that he was competent, appears to have gone even further than the hypothetical conduct at issue in this case: the ability of defense counsel for Grissom to merely tell the circuit court that counsel believed that additional evidence, in the form of testimony by Drs. Steinert and Benson, should be heard by the court. *See id.*, ¶17. That is, if defense counsel here had told the court that he personally thought that the court should hear such testimony before making a competency decision, this would not have required defense counsel to affirmatively seek to prove that Grissom was not competent. It would have simply allowed the court to hear expert testimony, presumably offered in a relatively narrative fashion, in response to any questions that the prosecutor, defense counsel, or the court wanted to pose. Therefore, the discussion in ***Daniel*** appears to signal that defense counsel could have taken that specific step of requesting an evidentiary hearing under the circumstances here, consistent with the statement in WIS. STAT. § 971.14(4)(b) that, "[i]n the absence of *these* waivers, the court *shall* hold an evidentiary hearing on the issue." (Emphasis added.)

¶43 Grissom makes one argument on this topic that we have difficulty tracking. He points out that WIS. STAT. § 971.14(4)(b) does not expressly address "what position defense counsel may or may not take" regarding the need for an evidentiary hearing. He also points out that § 971.14(4)(b) assigns to the State the burden of ultimately showing competence or lack of competence regardless of the position that the defendant personally takes regarding his or her competency. Given these points, he asserts, "[i]f the legislature intended defense counsel to take a position other than that of the defendant, it would have drafted the statute as such." Whatever Grissom intends to argue along these lines, we reject the argument for at least the following reasons. Section 971.14(4)(b) states that "[i]f the district attorney, the defendant[,] and defense counsel waive their respective

21

opportunities to present other evidence on the issue, the court shall promptly determine the defendant's competency," and "[i]n the absence of these waivers, the court shall hold an evidentiary hearing on the issue." By requiring that the district attorney, the defendant, and defense counsel each take a position on whether an evidentiary hearing is needed, the statute contemplates potentially differing positions on the issue by the defendant and defense counsel. The statutory language also unequivocally states that without each waiver, an evidentiary hearing shall be held. Further, Grissom does not identify a legislative objective evident in § 971.14 that would be stymied by allowing defense counsel to give a personal answer regarding whether an evidentiary hearing should be held. For example, Grissom fails to explain why the fact that the burden remains on the State, regardless of the defendant's position regarding competency, supports his due process argument.

¶44   So far as Grissom argues the point, we see no reason not to interpret WIS. STAT. § 971.14(4)(b) to direct defense counsel to indicate whether an evidentiary hearing should be held and to identify the witness or witnesses whose testimony may assist the court in resolving the competency issue. Again, calling on defense counsel to express a view about counsel's "respective opportunit[y] to present evidence," in the words of § 971.14(4)(b), does not obligate defense counsel to raise any particular question or to reveal any confidential communications. And, it would be meaningless for the legislature to identify three different voices that need to be heard on this question if counsel must always say the same thing as the client. In making this argument, Grissom has not shown that defense counsel here did not have the obligation to provide an independent answer on this narrow topic carved out by the legislature.

22

¶45    Grissom argues that "absurd and unconstitutional results" would follow from an interpretation of WIS. STAT. § 971.14(4)(b) that would permit defense counsel to take the position that an evidentiary hearing should be held on the competency issue in those cases in which the State and the defendant both take the position that a hearing is not needed. The problem, Grissom contends, is that in this scenario the defendant is left "unrepresented" and wholly reliant on the State "for advocacy." But, as authority that we consider to be persuasive has pointed out, defense counsel's duty in this context is not to advocate for a finding of competency or incompetency. *See **People v. Corbett***, 2022 IL App (2d) 200025, ¶57, 219 N.E. 3d 1127. Instead, defense counsel's role is "to take all the necessary steps to ensure a fair determination" of competency—including the critical objective of trying to avoid a violation of the defendant's due process right to not face criminal proceedings while incompetent. *See **id.*** ("When a *bona fide* doubt is raised as to the defendant's fitness before trial, but the defendant makes known that he [or she], personally, desires to be deemed fit and participate in a trial, defense counsel should not blindly advocate for her or his client's expressed position."). Certainly, Grissom does not develop an argument that here the circuit court had a basis to think that defense counsel was constitutionally ineffective—or even that his performance was less than thoroughly zealous—in protecting Grissom's interests on the competence issue, so as to reasonably cast doubt on the sincerity or legitimacy of the positions taken by his defense counsel and Grissom on the lack of need for an evidentiary hearing.[12]

---

[12] Grissom explicitly disavows an argument that defense counsel provided him with constitutionally ineffective assistance in any respect, including when counsel told the circuit court that no evidentiary hearing was needed.

¶46    Grissom directs our attention to SCR 20:1.2, which requires attorneys to "abide by a client's decisions concerning the objectives of representation," and he implicitly relies on SCR 20:1.6, which establishes counsel's duty of confidentiality to the client.  But he fails to offer a developed argument that, if defense counsel had told the circuit court that he personally favored holding a hearing, this action in itself would have failed to abide by Grissom's "objectives of representation" or required sharing with the court any privileged information.  Grissom merely alludes to potential tensions for defense attorneys, but fails to directly address the intersection of the statutory directives in WIS. STAT. § 974.14(4)(b) and the ethical rules.  We would have to develop an argument for him, and that would depart from our neutral role.

¶47    We recognize Grissom's general point that this can be a highly challenging area for defense counsel.  An attorney in defense counsel's shoes here certainly *could* have fallen short of the mark.  This is illustrated by an unpublished opinion that Grissom offers as persuasive authority, in which this court determined that defense counsel rendered constitutionally ineffective assistance in the competency context.  *See* *State v. Ford*, unpublished slip op. Nos. 2022AP187-CR, 2022AP188-CR, ¶¶19, 24-25 (WI App. Oct. 31, 2023).  We determined in *Ford* that it was deficient performance for defense counsel to confer regarding the competency issue with an evaluator who asked about counsel's "experiences" with the defendant, and counsel discussed with the evaluator, among other things, counsel's perceptions about the defendant's "procedural understanding" and counsel's concerns about the defendant's ability to reason and make judgments about legal strategy.  *Id.*  We ruled that the attorney's conduct breached the attorney-client privilege.  *Id.*  *Ford* serves as a useful reminder of the importance of the privilege, including in the competency context.  But, for reasons we have

already explained, the facts of *Ford* are so different from those involved here that it does not assist Grissom on this issue.

¶48    Grissom questions the utility of holding an evidentiary hearing that both the prosecutor and the defendant oppose holding, because defense counsel cannot, in Grissom's words, "adequately support" a finding of incompetency. Again, however, counsel's role in connection with such a hearing would be limited to taking necessary steps to avoid violations of the defendant's rights to not face criminal proceedings while incompetent and to not lose liberty through the competency process while competent.    In doing so, counsel would have to generally observe the attorney-client privilege.

¶49    In order to resolve this appeal, it is not necessary for us to try to categorize, as permissible or impermissible, all of the hypothetical conduct that Grissom's defense counsel could have engaged in at an evidentiary hearing.  It is sufficient to observe that Grissom does not support his suggestion that it would have created an obvious waste of the circuit court's time for defense counsel to decline to personally waive a hearing because conducting holding such a hearing would have been impractical or meaningless.

¶50    We also note that it undercuts Grissom's due process argument that here, defense counsel did not appear to consider himself obligated to, in the words of the Illinois court in *Corbett*, "blindly advocate" for Grissom's position that no evidentiary hearing was needed.  Defense counsel stated in a submission to the circuit court that, based on counsel's own observations and Dr. Benson's report, counsel had "a sufficient basis to assert that Mr. Grissom has a diminished capacity and that he is at risk of suffering substantial harm (in the form of legal jeopardy) unless protective action is taken."  When the court made its competency

ruling, based on all relevant components of the record, it was free to take into account all of the expressions of concern that defense counsel made.

¶51 In sum on this point, Grissom fails to show that the circuit court unreasonably determined that, under the circumstances here, defense counsel could adequately represent Grissom's interests, making the appointment of a GAL unnecessary.

¶52 Beyond that, as the circuit court also noted in denying the postconviction motion, and as summarized above, the court had a wealth of recent, detailed information to rely on in making its competency decision, even beyond the court's own multiple observations of, and colloquies with, Grissom. As summarized above, Dr. Steinert's Dane County circuit court competency reports of April 25, 2023, and August 18, 2023, as well as his Winnebago County circuit court competency report of September 28, 2023, opining to Grissom's competency, focused exclusively on the competency issue. In contrast, Dr. Benson's August 21, 2023 report, based on a July 27, 2023 interaction with Grissom, was focused primarily on the criminal responsibility issue. Further, Dr. Steinert acknowledged and took into account Dr. Benson's opinion in explaining Dr. Steinert's own conclusion, and Dr. Steinert provided the explanatory context that he believed Grissom to be malingering. Thus, even without the benefit of an additional hearing at which further evidence and argument could have been offered, the circuit court in this case had an ample record on which to resolve the issue of competency.

¶53 Grissom suggests that Dr. Steinert's assessment of malingering is difficult to square with Grissom's persistent position that he was competent. But Grissom fails to develop an argument that the circuit court lacked a sufficient basis

to credit Dr. Steinert's statement about malingering when the court gave Dr. Benson's opinions the weight that the court thought they merited, based on the record as a whole.

¶54 For these reasons, we are not persuaded that the circuit court violated Grissom's due process right not to proceed while incompetent. The court properly exercised its discretion, as it could do consistently with the express terms of WIS. STAT. § 972.11(1), not to appoint a GAL, and it properly followed the procedure in WIS. STAT. § 971.14(4)(b) not to hold an evidentiary hearing and to render its competency decision based on the record as a whole, including the court's observations of Grissom and Dr. Steinert's well-documented, recent conclusions that Grissom was competent.

## II.    Facial Constitutional Challenge to WIS. STAT. § 971.14(4)(b)

¶55 The proponent of an as-applied constitutional challenge must demonstrate that his or her constitutional rights were actually violated. *State v. Roundtree*, 2021 WI 1, ¶18, 395 Wis. 2d 94, 952 N.W.2d 765. If the proponent makes that demonstration, "the operation of the law is void as to the facts presented for the party asserting the claim." *Id.* We presume that the challenged statute is constitutional, and the party raising a constitutional challenge must prove beyond a reasonable doubt that the statute was applied in an unconstitutional manner. *Id.* The constitutionality of a statute presents an issue of law that we review de novo. *State v. Wood*, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63.

¶56 Grissom argues that WIS. STAT. § 971.14(4)(b) is unconstitutional as applied to him, because "it allowed a potentially incompetent defendant to assert competence and waive an evidentiary hearing to determine competency," which

27

resulted in "the parties stipulating to competency despite the existence of a report to the contrary, and the expressed concerns of defense counsel."

¶57 We conclude that Grissom fails to show beyond a reasonable doubt that the operation of WIS. STAT. § 971.14(4)(b) in this case violated his due process right to proceed in the criminal case only when competent. As required by § 971.14, the circuit court made a determination regarding his competency based on relevant aspects of the record. Grissom fails to support his contentions that the court "simply ignore[d] Dr. Benson's report" and that Grissom was deprived of "an accurate determination" of his competency. Dr. Steinert's conclusion explicitly took into account Dr. Benson's points, the court did not indicate that it ignored Dr. Benson's report, and as we have explained, the record provided ample support for a determination that Grissom was competent.

¶58 Grissom suggests that WIS. STAT. § 971.14(4)(b) conflicts with what he contends is reasoning in *Pate* supporting the proposition that a defendant who may be incompetent should not be able to waive an evidentiary hearing bearing on the defendant's competency. But *Pate* does not stand for that proposition. Instead, it states that a potentially incompetent defendant may not be allowed to waive the defendant's "right to have the court determine his [or her] capacity to stand trial." *Pate*, 383 U.S. at 384. And here, § 971.14(4)(b) allows a defendant, as one of three voices, only to waive the opportunity for the court to hear *additional* evidence. *See Guck*, 176 Wis. 2d at 851-52 (noting that as long as there is a reasonable opportunity for the defendant to be heard, due process does not prevent Wisconsin from establishing its own proceedings for determining competency (citing *Medina*, 505 U.S. 437)); § 971.14(2)-(3) (describing procedures for examination of potentially incompetent defendant and any resulting reports). The three-voice procedure in § 971.14(4)(b) does not allow a defendant

28

to waive the right to have the circuit court make a competency determination based on relevant evidence, and the court in fact did so here.

¶59   Grissom cites ***Johnson*** for the proposition that the competency procedures in WIS. STAT. § 971.14 are "'illusory'" if neither counsel nor the court invoke those procedures despite evidence that creates reasonable doubt about a defendant's "'sanity.'"  ***Johnson***, 133 Wis. 2d at 219 (quoted source omitted). But, the issue in this case is not whether the competency procedures in § 971.14 were invoked.  They unquestionably were at all pertinent times.  Grissom fails to show how ***Johnson*** supports his constitutional argument.

**IV.   Knowing, Voluntary, and Intelligent Plea**

¶60   Grissom directly challenges the plea hearing, arguing that the circuit court overlooked a manifest injustice when it rejected his postconviction challenge to the plea without holding an evidentiary hearing.  This is so, Grissom contends, because he made statements at the plea hearing demonstrating that he "did not understand multiple aspects of the plea," and the court failed to respond by ensuring that he had correct understandings, including regarding the nature of the charge to which he proposed to enter a plea, which deprived him of the right to enter a plea that was knowing, voluntary, and intelligent.

¶61   As pertinent to the argument that Grissom advances, the circuit court was obligated to hold an evidentiary hearing on his postconviction motion for plea withdrawal if the motion: (1) made a prima facie showing that the plea was defective under WIS. STAT. § 971.08 or other court-mandated duties; and (2) alleged that he in fact did not know or understand information that should have been provided during the plea colloquy.  ***State v. Bangert***, 131 Wis. 2d 246, 274,

389 N.W.2d 12 (1986); *see also State v. Brown*, 2006 WI 100, ¶¶22, 34-35, 293 Wis. 2d 594, 716 N.W.2d 906.

¶62   The State argues in part that Grissom's argument fails because his motion failed to meet the first *Bangert* prong of making a prima facie showing that the circuit court committed an error with regard to its duties at a plea hearing under WIS. STAT. § 971.08(1) or case law. We assume without deciding that Grissom has made a prima facie showing on the first *Bangert* prong, and we reject Grissom's argument based on the failure of his motion to satisfy *Bangert*'s second prong. As we explain, none of the purported incidents of confusion alleged in the motion is supported by a reasonable construction of the plea transcript, given the court's clear and comprehensive efforts to ensure Grissom's correct understandings, and this rendered a hearing on the postconviction motion unnecessary.

¶63   Grissom interprets the plea hearing transcript to reflect that he did not understand the elements of the bomb scare charge to which he entered the plea, which was Count 1 of the criminal information, as opposed to the terroristic threats charge, which was Count 2. We conclude to the contrary that the transcript establishes his understanding.

¶64   As Grissom notes, both charges require proof that Grissom issued a threat. *Compare* WIS JI—CRIMINAL 1920 *with* WIS JI—CRIMINAL 1925A. But the bomb scare charge requires proof that the threat was related to an explosive (as reflected in the word "bomb") and was knowingly false (as reflected in the word "scare"), while the terrorist threat charge requires proof of an intent to create an evacuation, panic, or interruption of government operations. WIS JI—CRIMINAL 1920; WIS JI—CRIMINAL 1925A.

¶65    The circuit court opened the plea hearing by explaining its understanding that Grissom was going to "plead to Count 1 with the habitual criminality enhancer," and that Count 2 would be dismissed and read in, and counsel on both sides confirmed this plan. The court directly addressed Grissom and confirmed that defense counsel had reviewed a plea questionnaire, with attached jury instructions for Count 1, with Grissom.

¶66    The circuit court told Grissom that, in order to prevail on Count 1, the State "would have to prove at trial that you conveyed or caused to be conveyed a threat, knowing it was false, concerning an alleged attempt being made or to be made to destroy property by means of an explosive, and that was done intentionally." Grissom does not suggest that this was not a complete, accurate statement of the elements of the offense to which he was entering the plea.

¶67    The following discussion then occurred:

| Grissom: | Is this jury threats? |
| The Court: | No, this is bomb scare. |
| Defense counsel: | That's what he is describing. |
| Grissom: | Oh, that's what he is telling me? |
| Defense counsel: | That's what he read. |
| Grissom: | Yep. |
| The Court: | Do you understand those elements? |
| Grissom: | Yeah. |

The circuit court went on to address the penalty enhancement and maximum available sentence.

¶68    Later, the circuit court asked Grissom if any promises had been made to him that caused him to decide to enter the plea, other than the State agreeing to cap its recommendation regarding initial confinement at no more than five years.  In response, Grissom asked, "When you say capping argument, what do you mean?"  The court explained to Grissom what it meant for the State to commit to cap its sentencing recommendation, and then the court began to explain that the State could argue that the sentence in this case be consecutive or concurrent to any existing sentences.  Grissom interrupted to ask, "For the jury?"  Defense counsel said, "For the bomb threat."  Grissom said, "Okay.  Yeah."  The court asked Grissom, "Do you understand that?"  Grissom replied, "Yeah."

¶69    The circuit court further explained directly to Grissom the consequences of Count 2 being dismissed but read in for purposes of sentencing.  The court asked Grissom what his plea was to Count 1, and Grissom responded, "Guilty."

¶70    Summarizing, the circuit court expressly ascertained that Grissom understood the elements of Count 1 as correctly conveyed by the court, and no one at the hearing expressed confusion about differing elements in Count 2.  After Grissom initially raised a question about whether he would be pleading to a charge involving a jury, the court used a careful colloquy to dispel confusion on that point.  Then, when Grissom again referred to "the jury"—in the course of the court's discussion of sentencing recommendations that the State could make— defense counsel and the court redirected Grissom back to fact that he was entering a plea to Count 1, which has nothing to do with a jury, and he said that he understood.

¶71     Grissom contends that the circuit court failed to "explain that there would be no jury involved if he entered a plea." This is not accurate. Both the plea questionnaire and statements made by the court at the hearing informed Grissom that he would be waiving the right to trial by a jury and a unanimous jury verdict, and he indicated that he was waiving those rights.

¶72     It is true that Grissom briefly digressed at one point during the plea hearing to refer to "someone forg[ing] my name" on "documents in the prison system." Grissom now contends that these statements "bordered on paranoid and delusional." But after the circuit court told Grissom that these comments were "getting a little bit off track," Grissom said, "Sorry," and the court and Grissom were then able to continue to engage in a coherent colloquy on relevant issues. This portion of the plea hearing during which Grissom made ambiguous statements alerted the court to the risk that Grissom might miss critical information through confusion or distraction, and the court responded in a clear and appropriate manner.

### V.     Reversal in the Interest of Justice

¶73     Without developing any arguments different from those that we have already rejected, Grissom argues that this court should exercise its discretionary authority to vacate his plea in the interest of justice. *See* WIS. STAT. § 752.35. We decline to exercise that authority in this case, for reasons we have already explained.

¶74     Under WIS. STAT. § 752.35, this court may exercise its broad authority to reverse when it appears from the record that: (1) "the real controversy has not been fully tried"; or (2) "it is probable that justice has for any reason miscarried." We "approach[] a request for a new trial with great caution." ***State v.***

*Avery*, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60. Such reversals should be "rare and reserved for exceptional cases." *State v. Kucharski*, 2015 WI 64, ¶41, 363 Wis. 2d 658, 866 N.W.2d 697.

¶75    Grissom's primary argument for reversal rests on the first issue that he raises on appeal, addressed above. He emphasizes that, at the hearing at which the circuit court in this case denied defense counsel's motion to appoint a GAL, defense counsel represented that the circuit court in Winnebago County had found Grissom not competent and not likely to regain competency, and that the Winnebago County court had dismissed that case. But it does not necessarily support an argument that the court in this case should have appointed a GAL—much less that the court's acceptance of the plea represented a miscarriage of justice—if a different court dismissed a different case against Grissom, based on a record that may have differed significantly from the record in this case. Further, even if the two courts had contemporaneous records that were substantially similar on the topic of Grissom's competency, Grissom fails to show that justice miscarried in this case because of the manner in which the court in this case resolved the competency issue.

¶76    Grissom also briefly asserts that reversal in the interest of justice is merited because the record reflects that he was "clearly confused at the plea hearing." But we have explained why we conclude that Grissom has failed to show confusion that went unaddressed in a manner that undermined the validity of his plea.

## CONCLUSION

¶77    In sum, for all of the reasons stated above, we affirm the circuit court's judgment of conviction and order denying his postconviction motion.

34

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.